## DUNLOP et al. v. KENNEDY et al.*

### No. 15,112; August 31, 1893.

#### 34 Pac. 92.

**Mechanics' Liens.**—Failure of the Contract for Erecting a building to comply substantially with Code of Civil Procedure, sections 1183, 1184, relating to mechanics' liens, does not render the contract void. Lumber Co. v. Wooldredge, 90 Cal. 578, 27 Pac. 431, followed.

**Mechanics' Liens.**—A Contract for Erecting a Building, which provides that twenty-five per cent of the sum to be paid shall remain unpaid until thirty-five days after completion of the building, and the remainder be paid in partial payments equal to seventy-five per cent of the value of the work and material done and furnished at the time of such payments, sufficiently complies with Code of Civil Procedure, section 1184, providing that the contract price shall, by the terms of the contract, be made payable in installments at specified

---

*For subsequent opinion in bank, see 102 Cal. 443, 36 Pac. 765.

times after commencement of the work, and on the completion of the work, provided that at least twenty-five per cent of the whole contract price shall be made payable at least thirty-five days after final completion of the contract.

Mechanics' Liens—Contract for Building.—Under Code of Civil Procedure, section 1184, requiring the contract for erecting a building to specify times when payments are to be made, and requiring twenty-five per cent of the price to be retained until thirty-five days after completion, partial payments, however they are specified as to time, may be safely made, provided no notice of their subcontracts is given by materialmen, in the absence of which they must rely on the responsibility of the contractor, and the twenty-five per cent required to be retained; and in such case they are not injured by any uncertainty as to the times of payment specified nor by payments in advance of the specified time.

Mechanics' Liens—Contract for Building.—All That Materialmen can require, in such case, is that at the time they serve written notice upon the owner, or, if no notice is served, at the time their lien is filed, there shall be in his hands the amount required by the contract and said section.

Mechanics' Liens.—It Does not Prejudice Persons Furnishing a contractor material for erecting a building that the owner of the land purchased material from a firm of which he was a member, and furnished it to the contractor as a partial payment of the contract price, which partial payment he had a right to make.

Mechanics' Liens.—The Owner of a Building Who, Out of the Contract Price, has paid laborers who were entitled to file liens, and would have filed them but for such payment, and who has also retained out of the contract price the twenty-five per cent required by Code of Civil Procedure, section 1184, to be retained until thirty-five days after completion of the contract, is entitled to credit for such payment; and materialmen are not entitled to have the amount of such payment considered as part of the fund available for their claims, on the ground that there could be no privity between the owner and such laborers until they filed their liens, so as to entitle him to pay them.

Mechanic's Lien—Who must Sign Contract.—The mechanic's lien statute does not require that the contract for erecting a building shall be signed by the owner, and it is sufficient if it be signed by the reputed owner.

Mechanic's Lien.—A Contract for Erecting a Building, and also for improvements on an adjoining lot running "westerly," is not avoided by the fact that the recorded memorandum of the contract erroneously uses the word "easterly," nor is the sufficiency of the memorandum destroyed.

APPEAL from Superior Court, City and County of San Francisco; William T. Wallace, Judge.

Consolidated actions by Charles Dunlop and others against Alice Kennedy and John F. Kennedy to enforce liens for material. From a judgment for plaintiffs, defendants, Kennedy, appeal. Reversed.

Attorney General Hart and Nowlin & Fassett for appellants; Parker & Eells for respondents.

HAYNES, C.—Consolidated actions to enforce liens of materialmen. Plaintiffs had judgment, and defendants Alice Kennedy and John F. Kennedy, the owners, appeal from the judgment and an order refusing a new trial. On September 26, 1889, Alice Kennedy, wife of said John F. Kennedy, entered into a contract in writing with Gray & Stover, of which firm the defendant Stover is the surviving partner, by which they were to erect for her a three-story building (flats), and to furnish all materials and labor therefor, together with certain cement sidewalks and other walks on the same lot, and "also sidewalk in front of lot adjoining, running forty-two feet westerly, and all walkways and yard in connection with said lot." The contract did not apportion the price of the work upon each lot, but the contractors were to be paid $6,600 "at the times and in the manner following, to wit: Twenty-five per cent of the contract sum to remain unpaid until thirty-five days from and after completion of said building, and its acceptance by the within named architect. The remaining amount to be paid in partial payments in amount equal to seventy-five per cent of the value of the work done and materials furnished at the time of such payments." The contract was not filed in the recorder's office, but a memorandum of it was filed before the commencement of the work. Gray & Stover prosecuted the work until January 19, 1890, when Gray died, and Stover continued the work until February 18, 1890, when he abandoned the work before completion; and the owners, after due notice to the surviving contractor, continued the work, and completed it March 17, 1890. At the time of the contract there was a stable upon the lot, for which the contractors were to pay $150, and remove it. On

December 21st, Kennedy paid the contractors $3,000 in cash; and on January 14, 1890, the contractors receipted for $4,000, which included the said payment of $3,000, and $1,000 for lumber furnished under the following circumstances: John F. Kennedy was a member of the Kennedy-Shaw Lumber Company, and he agreed with the contractors to furnish the lumber, and it was furnished to the contractors to the above amount, and used in the building, the lumber company charging it to Kennedy, and that amount was included in the receipt as paid upon the contract. At the time Stover abandoned the work there was due from the contractors to laborers $285, which amount was at once paid by the owners to the laborers. There was also due from the contractors to materialmen at the date of abandonment, including the amount due the plaintiffs in the consolidated cases, $2,656.74. The actual cost of completing the work in the manner the contract required was $1,255.89. After completion, the owners estimated the balance of the contract price remaining in their hands at $890.86, and offered to the respondents Towle & Broadwell, and to respondent Dunlop, and the other materialmen, their several pro rata shares of said sum. All except Towle & Broadwell and Dunlop accepted the offer, and received the payment in satisfaction of their several claims. Dunlop and Towle & Broadwell refused to accept the offer. Those accepting the settlement were five in number, and their claims aggregated $998.74. Whether the offer was made to respondents before their liens were filed does not appear. The others did not file liens. The court found due to respondent Dunlop $585, and to Towle & Broadwell $1,073, besides costs and attorneys' fees to each, and that they were entitled to liens for those amounts. Other findings necessary to be noticed are that John F. Kennedy was and is the owner in fee of the premises, and that Mrs. Kennedy is the reputed owner; that no memorandum of the contract was ever filed, except that set out in the findings; that the defendants did not comply with the terms of the contract as to payments, but that on December 21, 1889, there was paid $3,000 in cash, and on January 14, 1890, a receipt was given for that sum, and $1000 for the lumber hereinbefore mentioned and that no cash payments were made, except said sum of $3,000; and, as a conclusion of law, that the materials furnished by plaintiffs were furnished

at the personal instance of defendants. But whether this conclusion is based upon the supposed insufficiency of the contract and memorandum, as to the time of making partial payments, or upon the ground that overpayments were made, is difficult to ascertain. Both grounds are urged in respondents' brief, and require consideration.

If it were conceded that the contract and memorandum did not substantially comply with sections 1183 and 1184 of the Code of Civil Procedure, that fact would not, as respondents' counsel contend, make the contract void: San Diego Lumber Co. v. Wooldredge, 90 Cal. 578, 27 Pac. 431. It was said, however, in that case: "But the same consequence follows for a material nonconformity of the contract with the statute, under section 1184, so far as to permit materialmen and laborers to recover without regard to the amount due upon the contract." Said section provides that "the contract price shall, by the terms of the contract, be made payable in installments at specified times after the commencement of the work or on the completion of the work, provided that at least twenty-five per cent of the whole contract price shall be made payable at least thirty-five days after final completion of the contract." I think the contract in question substantially complied with the requirements of this section. The owner cannot with safety agree to pay a definite amount on a particular day, as he cannot know in advance whether the contractor will have earned the payment; and, if the payment is to be made upon reaching certain stages of the work, it only furnishes the means of ascertaining the day of payment when it actually arrives. The whole object of the provision is to protect materialmen, and any specification which accomplishes this purpose is sufficient. The partial payments, no matter how they are specified as to time, may safely be made, provided no notice of their subcontracts has been given by materialmen. These payments may therefore be anticipated and secured as a fund for the payment of their claims, by giving written notice as provided by statute. In the absence of such notice they must rely upon the personal responsibility of the contractor, and the twenty-five per centum of the whole contract price required to be retained for thirty-five days after the completion of the work; and in such case they are in no wise affected by any uncertainty as to the time when partial payments are to be made,

nor by payments thereof in advance of the time specified. If, however, a materialman gives written notice of his claim for materials furnished to the contractor before the time fixed for a partial payment, he thereby acquires an interest in that and subsequent payments, to the extent of his claim, and may hold the owner for the amount thereof, notwithstanding the fact that that payment was made before the notice was served. In this case, however, no notice was served, and it is therefore immaterial whether the contract was indefinite as to the time of payments. It requires the owner to have in his hands at all times at least twenty-five per centum of the value of the work done and materials furnished, so that at any time notice might be served the owner was liable for that proportion of the work actually done, as well as all the contractor should earn thereafter. The record does not show the value of the labor and materials done and furnished at the date of the payment of $3,000, but the court found that at the date of Gray's death the work was not more than three-fourths completed. At that date the owners had paid $287.50, more than seventy-five per cent of the work done. But Stover, the surviving partner, continued the work until February 17th, when he abandoned it. The testimony of the architect shows, without contradiction, that it cost to complete the work $1,255.89, showing that the contractors had earned, at the time of the abandonment, $5,344.11. Seventy-five per cent of that sum is $4,008, showing in the hands of the owners $8 more than the twenty-five per cent required by the contract to be retained from partial payments. All that materialmen can require is that at the time they serve written notice upon the owner. or, if no notice is served, at the time their lien is filed, there shall be in the hands of the owner the amount required by the contract and the law; and, if that amount is in his hands, there can be no liability resting upon him or his property beyond it. The statute must have a reasonable construction as well for the protection of the owner as of the materialman. It would be no hardship upon materialmen if their right to a lien were by statute made to depend upon prompt notice to the owner of their agreement with the contractor to furnish materials; and if they would avail themselves of the right now given them by the statute, to serve written notice upon the owner, a very large amount of vex-

atious and expensive litigation would be wholly avoided. In this case the owners were not liable to laborers and materialmen for more than the balance of the contract price after deducting all proper credits, and the cost of completing the work in the manner required by the contract. In ascertaining this balance the court rightly excluded the item of $150, the price of the stable sold to the contractors. It appears to have preceded the commencement of the work, and therefore within the express letter of the statute, though it does not appear that respondents were or could have been injured by the payment.

I am unable to ascertain from the findings whether the court considered the $1,000 paid by the lumber transaction as a payment. Respondents' counsel insist that it is not a payment, as against them. It is true Mr. Kennedy, in his testimony, spoke of it as an "offset." The name given to a transaction, especially by a nonprofessional witness, does not change its character. The contract required the contractor to furnish all materials, and neither the contract nor the law restricts him as to the person from whom he shall purchase them. The lumber was delivered to and used by the contractor in the erection of the building. No question is made as to the price paid for the lumber, nor that any injury or injustice did or could accrue therefrom to respondents. The Kennedy-Shaw Lumber Company had no interest in the erection of this building. They had the right, for their own protection, to require that the owner should become personally liable. Suppose that one of these respondents should have pursued that course, and had been paid by Kennedy with the consent of the contractor. Could the other have objected? The statute is not aimed at transactions such as this. The "prior or subsequent indebtedness, offset, or counterclaim in favor of the reputed owner and against the contractor," mentioned in the statute, applies to dealings of a different character, and was intended to prevent transactions between the owner and contractor by which the contractor's ability to pay for material might be diminished or destroyed. Materialmen are not privies to the contract, and can have no possible interest in it, further than above indicated.

I also think that appellants should be allowed the amount paid to the laborers and to the other materialmen. The bill

of exceptions contains the following: "It was admitted by Mr.
Eells, who represented the plaintiffs on the trial, that the
various claims on account of which the defendants, Kennedy,
paid a pro rata to the various mechanics and materialmen for
materials and work performed previous to the abandonment
of said contract were correct, and the parties were entitled to
file a lien, except for the artificial stonework, and for the fences
and curbs set on and in front of the adjoining lot, and would
have done so if the payments had not been made, but it was
not admitted that they, or any of them, would have filed good
liens." Respondents contend that until liens are filed there
is no privity between the owner and subcontractors; that no
money was due them from the owners, and none could be paid
until after liens were filed, complying with all the essential
requirements of the statute. As a general proposition, that is
true, and fully supports the position hereinbefore taken touch-
ing the payments made by the owners to the contractors. But
the admission above quoted is very broad. It concedes that
the claims of these laborers and materialmen were correct; that
they were entitled to file liens therefor, except as to work on
the adjoining lot, and would have filed them, but for the pay-
ment. The qualification that it is not admitted that they
would have filed "good liens" does not change the situation.
Being entitled to file liens for the amount of their several
claims, and it appearing that they would have filed them, we
cannot assume, at the expense of the owner, that they would
have so defectively prepared them as to render them invalid.
The presumption is the other way. Actions to enforce liens
under the mechanic's lien law, though statutory, are in their
essential features equitable. If liens had been filed the
laborers would have been entitled to the first lien, and payment
in full, while the materialmen would have shared in the re-
mainder of the fund pro rata with respondents, and the fund
would have been diminished by additional costs and attorneys'
fees if the settlement had not been made. Respondents were
therefore benefited, instead of injured, by the settlement made;
though not so largely benefited as they would be if they compel
the owner to pay a like sum to them in addition to what they
are equitably entitled to. The same offer was made to re-
spondents, but, whether before or after their liens were filed,
does not appear. As to the work done upon the adjoining lot,

it was all included in the one contract for a lump sum, and it cannot be divided so as to apportion it between the two lots. The work upon the adjoining lot was all of a character for which a lien is given by the statute (Code Civ. Proc., sec. 1191), and when materials have been furnished under a single contract for buildings or improvements on two or more contiguous lots owned by the same person a lien may be filed against all: Lyon v. Logan, 68 Tex. 521, 2 Am. St. Rep. 511, 5 S. W. 72. The fund sought to be reached by respondents in part accrued from work and materials bestowed upon the adjoining lot, and if they can file a valid lien upon one lot under such contract (a point not argued or decided), I fail to see why all laborers and materialmen may not file valid liens upon the lot upon which the building was erected, and upon which alone respondents filed their liens. Besides, a conclusive answer to the exception contained in the admission of respondents is that the record does not show that any of the claims settled and paid by appellants were for work done upon the "adjoining lot." I think these payments should have been allowed to defendants in reduction of the fund.

It is also urged by respondents that the contract does not conform to the requirements of the statute, because it was signed only by Mrs. Kennedy, while the court found that her husband, John F. Kennedy, was the owner in fee. The statute does not require that the contract be signed by the owner. It is sufficient if signed by the reputed owner, and it was found that Mrs. Kennedy was the reputed owner. Besides, the owner, not having given notice as required by the statute that he would not be responsible for the improvements upon his property, is as conclusively bound, so far as laborers or subcontractors are concerned, as though he had made the contract.

The contract described the adjoining lot as running forty-two feet "westerly," while in the memorandum "easterly" was inserted instead. The error did not destroy the sufficiency of the memorandum. It was described as "the lot adjoining" the lot first described; and as a misdescription does not avoid a contract of this character (Yancy v. Morton, 94 Cal. 558, 29 Pac. 1111), the error was capable of correction by proper averment and proof.

The payments by the owners to the laborers and materialmen (other than the respondents) were alleged in the answer,

but there was no finding as to the fact of payment. The findings, as made, however, do not support the judgment, inasmuch as the facts found show a balance in the hands of the owners much less than the amount of the liens adjudged to the respondents, the judgment being based upon an erroneous conclusion of law that the materials supplied by plaintiffs were furnished at the special instance and request of the owners. The judgment and order appealed from should be reversed.

We concur: Temple, C.; Belcher, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order appealed from are reversed.